**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| Kevin Kennedy, | Case No. 2:21-cv-01358-RFB-DJA |
| Plaintiff, | |
| v. | **Order**<br>**and**<br>**Report and Recommendation** |
| Shelly Williams, et al., | |
| Defendants. | |

Pro se Plaintiff Kevin Kennedy is an inmate at the Northern Nevada Correctional Center. He is proceeding on one remaining cause of action for denial of access to the courts against Defendant John Doe #1.  (ECF No. 90) (minutes of proceedings). This claim arises out of Plaintiff's allegation that, in February of 2021, someone in the prison law library and/or mailroom failed to properly process Plaintiff's mail containing his habeas corpus petition.  (ECF No. 64) (screening order).  At a hearing on January 23, 2025, the Honorable District Judge Richard F. Boulware gave Plaintiff until March 24, 2025, "to name the Defendant John Doe 1 for their remaining claim alleging denial of access to the courts."  (ECF No. 90).

Since then, Plaintiff has experienced difficulty determining John Doe #1's identity and filing his amended complaint.[1]  On November 11, 2025, the Court gave Plaintiff until December 2, 2025, to file a renewed motion for a subpoena[2] that he could use to determine John Doe #1's identity; sent him a transcript order form so that he could request the transcript of the January 23, 2025, hearing; and gave Plaintiff until January 19, 2026, to file an amended complaint identifying

---

[1] Plaintiff's documents are at times rambling and difficult to understand.  Plaintiff also often attaches many pages of exhibits to his documents.  The Court does its best to understand and summarize his claims and requests for relief.

[2] At that point in the case, there were no active Defendants, and thus no ability for Plaintiff to serve requests for production, interrogatories, or requests for admission on any other parties.  *See* Fed. R. Civ. P. 34 (requests for production), 33 (interrogatories), 36 (requests for admission).

John Doe #1.  (ECF No. 109).  Since then, Plaintiff has filed a third[3] amended complaint identifying new Defendants (ECF No. 112) and has filed various documents, including a "motion for subpoena to be accepted on file" (ECF No. 111), a motion for appointment of counsel (ECF No. 119), and a motion for order to show cause (ECF No. 120).  The Court screens Plaintiff's third amended complaint, but finds that it fails to state a claim upon which relief can be granted.  So, the Court recommends dismissing Plaintiff's third amended complaint without prejudice to filing a complaint in another case under a new case number, but without leave to amend in this one.  Given the Court's recommendation, the Court further denies Plaintiff's pending motions for subpoena to be accepted, for appointment of counsel, and for order to show cause as moot.

## I.      Screening the third amended complaint.

Plaintiff brings his third amended complaint against Nevada Department of Corrections ("NDOC") Offender Management Division Case Records Manager Shelly Williams, High Desert State Prison ("HDSP") Warden Johnson, HDSP Associate Warden Williams, HDSP Associate Warden Bean, HDSP Senior Correctional Officer Alcock, the State of Nevada, HDSP Senior Correctional Officer Shepard, HDSP Senior Correctional Officer Allerd, HSDP Mailroom Staffing Officer C.A., and various John Does in the law library and mailroom of the HDSP and at the Seventh Judicial District Court Clerk's Office.  (ECF No. 112 at 1, 2, 4).[4]  Plaintiff alleges that on March 16, 2020, he began a grievance process against Shelly Williams for disclosing

---

[3] Plaintiff's amended complaint is titled "Second Amended Complaint," however, it is Plaintiff's third attempt at amending his complaint.  (ECF No. 30) (first amended complaint); (ECF Nos. 95, 97, 98, 99) (second amended complaint and supporting documents).

[4] Plaintiff raises numerous allegations related to the background of this case and related to his habeas corpus claims.  However, Plaintiff was only given leave to amend to name the John Doe allegedly responsible for denying Plaintiff's access to the courts in 2021.  (ECF No. 64) (screening order); (ECF No. 90) (minutes of proceedings).  So, the Court only considers Plaintiff's allegations related to his difficulties with his mail in 2021.  *See Mireskandari v. Daily Mail and General Trust PLC*, No. CV 12-02943-MMM-SSx, 2013 WL 12130251, at *2 n.13 (C.D. Cal. Dec. 1, 2013) (compiling cases standing for the proposition that courts may limit the scope of leave given to amend).  The Court acknowledges that it is not clear if Plaintiff ever ordered or received the transcript of the January 23, 2025, hearing at which his amendment was limited.  So, it is not clear if Plaintiff was aware that his amendment was limited.  As a result, the Court will recommend dismissal of Plaintiff's complaint without prejudice to him bringing his claims in a new case under a new case number.

confidential prison records to the White Pine County District Attorney's Office for use in a habitual criminal adjudication. (*Id.* at 5). In late September of 2020, Plaintiff was transferred from the Ely State Prison to the HDSP. (*Id.* at 7). While at HDSP, Plaintiff began researching and drafting a habeas corpus petition, using the HDSP law library. (*Id.*). Plaintiff exhausted the grievance process against Shelly Williams in October of 2020, and intended to raise his claims against Shelly Williams in his habeas petition. (*Id.*). Plaintiff received the results of his grievance process while he was in segregation. (*Id.*). Plaintiff also filed additional grievances in November and December of 2020 regarding the law library's handling of his filings into a Ninth Circuit case. (*Id.* at 8). Plaintiff asserts that his grievances alerted prison officials of his intent to challenge his conviction and are the reason why Defendants stole his mail while he was in segregation. (*Id.*). Plaintiff claims that, by stealing his mail, Defendants "completely destroy[ed] [P]laintiff['\]s strategy of seeking relief in the Seventh Judicial District Court White Pine County in Ely Nevada in Case #CR-1703024." (*Id.*).

Plaintiff explains that, on February 23, 2021, he sent his habeas corpus petition to the HDSP mailroom to be weighed for shipping. (*Id.* at 9). Plaintiff sent his petition in four large 12x15 manila envelopes with an Inmate Request Form titled "for Brass Slip[5] Postage and Documents Time Sensitive." (*Id.*). The form was returned to Plaintiff signed by staff initials "C.A.,"[6] dated February 23, 2021, and indicating that money was deducted from Plaintiff's account for each envelope. (*Id.*). Plaintiff alleges that his envelopes were destroyed and ripped

---

[5] A brass slip is an Inmate Account Transaction Request form that provides for deductions from an inmate's account. *See* Nevada Department of Corrections Administrative Regulation 258.13(2).

[6] Plaintiff asserts that mailroom officer "C.A." is the defendant "who must now be identified by subpoena and or any other Mailroom Officers on duty during the dates in question ? [sic] who have violated State and Federal laws…" (ECF No. 112 at 14). It is not clear to the Court that Plaintiff's subpoenas directed to finding the identity of John Doe #1 were ever properly served. Nonetheless, Plaintiff has amended his complaint to name individuals who could have been responsible for losing his mail. And even if the Court were to consider the possibility that there may be additional Doe parties that were responsible for losing Plaintiff's mail, Plaintiff has not alleged a colorable claim for denial of access to the courts against these Doe Defendants because he has not alleged an actual injury.

open. (*Id.*). Plaintiff did not have any other envelopes and so, reported the issue to Officer Kelly[7], who provided Plaintiff with four 9x12 manila envelopes. (*Id.*). Because the envelopes were smaller, Plaintiff had to remove preliminary hearing transcripts from his habeas corpus petition. (*Id.*). He had to wait until he could buy more manila envelopes from the canteen and then shipped out the transcripts on March 11, 2021. (*Id.*). Plaintiff states that he sent a letter to the clerk,[8] explaining the issues that he was having with the mailroom and with obtaining his financial certificates from the prison. (*Id.*). Plaintiff also sent the clerk certain of his medical kites, asserting that they should be part of the habeas petition. (*Id.*).

Plaintiff was able to send his habeas petition in the four 9x12 manila envelopes on March 2, 2021, as evidenced by brass slips signed by Alcock. (*Id.* at 10). Alcock also signed the brass slip for Plaintiff's preliminary hearing transcripts that he sent on March 11, 2021. (*Id.*). Confusingly, Plaintiff claims that he also included medical kites with his mailing, "signed by Medical G. Worthy – HIC … [sic] on December 24, 2020."[9] (*Id.*). Plaintiff claims that, because he received his signed brass slips, he believed that "everything was sent and well on its way to the courts." (*Id.*).

When several weeks went by without any response or return, on May 5, 2021, Plaintiff sent the court an inquiry and motion regarding the filing and the disposition of his habeas corpus petition, the brass slip for which was signed by Shepard. (*Id.*). Plaintiff also sent an inquiry to the District Attorney's Office as evidenced by a brass slip signed by Allerd on May 6, 2021. (*Id.*). Plaintiff asserts that neither of his inquiries were "filed with the courts." (*Id.*).

---

[7] Plaintiff neither names Kelly as a Defendant nor appears to bring any claims against Kelly.

[8] Throughout his complaint, Plaintiff often does not indicate where he sent his items or will refer to the "clerk" or the "court" generally, without specifying which clerk or which court. Where Plaintiff specifies the recipient of his mailings and filings, the Court does too in its summary of the facts.

[9] It is not clear if Plaintiff is alleging that he sent the kites to the court on December 24, 2020, if that date is a typographical error, or if Plaintiff is claiming that Worthy signed and sent *Plaintiff* the kites on December 24, 2020. In any event, Plaintiff does not list Worthy as a Defendant and does not appear to bring any claims against him.

Plaintiff then sent a declaration and a complaint to the Nevada Supreme Court to report the issues he was having with his legal mail, believing that the District Court was at fault. (*Id.* at 11). Plaintiff sent his declaration and complaint as evidenced by a brass slip signed on May 27, 2021, by Allerd. (*Id.*). Plaintiff asserts that he received "no filing or responses." (*Id.*). Plaintiff then sent a notice of appeal to the Nevada Supreme Court "via U.S. Postage Stamps," regarding his issues with his legal mail. (*Id.*). Plaintiff alleges that the clerk forwarded this document to the Seventh Judicial District Court and that it was filed on August 13, 2021, with a "Case Appeal Statement filed on August 17, 2021 [] by [J]udge Gary Fairman." (*Id.*). Plaintiff asserts that this was the "first entry into Court Docket since unusual gap between January 19, 2021 and August 13, 2021." (*Id.*).

Plaintiff alleges that Warden Johnson, Warden Williams, and Warden Bean are responsible for the theft of his mail under the doctrine of *respondeat superior*. (*Id.* at 12). He asserts that Alcock is responsible for the theft and destruction of his habeas corpus petition from March 2, 2021, and his transcripts from March 11, 2021. (*Id.* at 13). He alleges that Shepard is responsible for the theft and destruction of his legal mail to the court from May 5, 2021. (*Id.*). He alleges that Allerd is responsible for the theft and destruction of his legal mail to the District Attorney from May 6, 2021,[10] and to the Nevada Supreme Court on May 27, 2021. (*Id.*). And he alleges that C.A. is responsible for the theft and destruction of his habeas corpus petitions and legal mail from between March 2, 2021, and May 27, 2021.[11] (*Id.*). Plaintiff asserts that C.A. was also the individual to weigh his original habeas corpus application. (*Id.* at 14). Plaintiff adds that, if these individuals are not responsible for losing his habeas corpus petitions and legal mail,

---

[10] Plaintiff alleges that Shepard is responsible for the loss of this mailing, but Plaintiff alleges that Allerd was the individual to sign for it. So, the Court liberally construes Plaintiff as attributing this loss to Allerd.

[11] It is not clear what actions Plaintiff is referring to. Plaintiff alleges that on February 23, 2021, he sent his original habeas corpus petition to be weighed and that, on the same date, C.A. signed the brass slip for his original habeas corpus petition. (ECF No. 112 at 9). Plaintiff does not allege that C.A. took any actions between March and May of 2021.

then Nicole Baldwin[12] or "whomever was employed on the dates in question" at the Seventh Judicial District Court are responsible for losing his documents. (*Id.*).

Plaintiff invokes multiple theories of liability, including the First Amendment to the United States Constitution.[13] (*Id.* at 12). He also "raises again meritorious claims for Relief within his State Habeas Corpus petition." (*Id.* at 15). Plaintiff adds that he sent a habeas corpus petition to the Seventh Judicial District Court and to the White Pine District Attorney's Office on March 6, 2025, and that his petition was filed on March 14, 2025, but that Judge Fairman has yet to rule on the petition. (*Id.*). In two sections titled "Actual Injury Requirements," and "Applicable State and Federal Laws," Plaintiff lists various theories of liability in conclusory fashion, many of which appear to be related to his habeas corpus petition and to Plaintiff's request that the Court consider his habeas arguments. (*Id.* at 15-17).[14]

---

[12] Plaintiff does not name Nicole Baldwin as a Defendant or bring any claims against her other than speculating that she may have been involved in losing his documents.

[13] Plaintiff also invokes Article I, Section 9 of the United States Constitution; Article I, Section 5 of the Nevada Constitution; Nevada Revised Statutes § 34.720 – 34.800; Nevada Revised Statute § 205; Nevada Revised Statute § 209, and NDOC Administrative Regulation 722. (ECF No. 112 at 12). Article I, Section 9, Clause 2 of the United States Constitution and Article I, Section 5 of the Nevada Constitution both provide that the privilege of the writ of habeas corpus shall not be suspended. However, the Court is only deciding whether Plaintiff has amended his complaint to sufficiently allege a claim for denial of access to the courts, not to determine the merits of his habeas petitions. Nevada Revised Statutes § 34.720 – 34.800 are provisions that govern petitions for postconviction relief. Again, the Court is not deciding Plaintiff's habeas petition. Plaintiff does not identify the precise provisions of Nevada Revised Statutes § 205 and § 209 under which he brings his claims. But section 205 includes criminal statutes while section 209 governs the Department of Corrections, neither of which statutes appear to provide a private cause of action. Finally, NDOC's Administrative Regulations do not establish the basis for any cause of action. *Welch v. Dzurenda*, No. 3:23-cv-00224-ART-CLB, 2023 WL 8839703, at *7 (D. Nev. Dec. 20, 2023).

[14] In a second cause of action titled "1st Const. Amends. Right to Redress and 14th Const. Amends. Due Process," Plaintiff asks the Court to review all the filings in this case and two other federal cases filed in this district and to obtain his criminal records. (ECF No. 112 at 19). The Court declines to do so because a complaint should be complete in itself. *See* LR 15-1. Plaintiff also attaches hundreds of pages of exhibits, most of which are dockets and documents from other cases. (ECF No. 112 at 22-57) (ECF Nos. 112-1, 112-2, 112-3, 113-4). In screening Plaintiff's amended complaint, the Court considers only the allegations in the amended complaint itself, not the attached exhibits or any allegations made in other cases.

Plaintiff was only provided leave to amend his complaint to identify John Doe #1, against which Defendant Plaintiff was permitted to proceed on a denial of access to the courts claim. (ECF Nos. 64, 90, 96). So, the Court will only screen Plaintiff's allegations related to his denial of access to the courts claim. The Court will not consider Plaintiff's allegations related to the merits of his habeas corpus petitions or analyze other potential claims he may have raised.

In screening Plaintiff's denial of access to the courts claim, the Court first notes that Plaintiff does not successfully bring this claim against Sharon Williams, Warden Johnson, Warden Williams, and Warden Bean because he does not allege their personal participation. Plaintiff does not successfully bring this claim against the State of Nevada because the State cannot be sued in federal court. The Court then analyzes Plaintiff's denial of access to the courts claim as alleged against C.A., Alcock, Shepard, Allerd, and Doe Defendants and finds that Plaintiff does not successfully bring this claim because he does not allege an actual injury. The Court therefore recommends dismissing Plaintiff's complaint without prejudice to Plaintiff filing a complaint in a new case under a new case number, but without leave to amend in this one given Plaintiff's repeated failures to amend.

### A. *Plaintiff's claim against Sharon Williams, Warden Johnson, Warden Williams, and Warden Bean.*

Plaintiff alleges that Warden Johnson, Warden Williams, and Warden Bean are liable for violating Plaintiff's constitutional right to access the courts because they supervised the Defendants working in the law library and mailroom. Plaintiff brings no factual allegations against Sharon Williams. Plaintiff's clams against these Defendants fail because there is no *respondeat superior* liability under § 1983. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). A supervisor is only liable if he or she participated in or directed the violation, or knew of the violation and failed to prevent it. *Id.* Plaintiff does not allege that Warden Johnson, Warden Williams, and Warden Bean acted in any way beyond simply being the supervisors to employees who denied him access to the courts. And Plaintiff does not allege how Sharon Williams participated in denying him access to the courts at all. But even if he did, as the Court outlines

below, Plaintiff does not allege an actual injury stemming from his alleged denial of access to the Courts.

### B.    Plaintiff's claim against the State of Nevada.

Plaintiff's claims against the State of Nevada fail because the State of Nevada has not waived its immunity from suit in federal court, which immunity is conferred by the Eleventh Amendment. *See O'Connor v. State of Nev.*, 686 F.2d 749, 750 (9th Cir. 1982). So, to the extent Plaintiff brings his denial of access to the courts claim against this Defendant, it fails.

### C.    Plaintiff's claim against C.A., Alcock, Shepard, Allerd, and Does.

Prisoners have a constitutional right of access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 346 (1996). This right "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 828 (1977). This right, however, "guarantees no particular methodology but rather the conferral of a capability— the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Lewis*, 518 U.S. at 356. It is this "capability, rather than the capability of turning pages in a law library, that is the touchstone" of the right of access to the courts. *Id.* at 356-57.

To establish a violation of the right of access to the courts, a prisoner must establish that he or she has suffered an actual injury, a jurisdictional requirement that flows from the standing doctrine and may not be waived. *See id.* at 349. An "actual injury" is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Id.* at 348. Delays in providing legal materials or assistance that result in actual injury are "not of constitutional significance" if "they are the product of prison regulations reasonably related to legitimate penological interests." *Id.* at 362. The right of access to the courts is limited to nonfrivolous direct criminal appeals, habeas corpus proceedings, and § 1983 actions. *Id.* at 353 n.3, 354-55.

Plaintiff's third amended complaint fails to allege an actual injury. Plaintiff alleges that because Defendants destroyed or stole his mail, Defendants "completely destroy[ed]

[P]laintiff[']s strategy of seeking relief in the Seventh Judicial District Court White Pine County in Ely Nevada in Case #CR-1703024." (ECF No. 112 at 8).  But Plaintiff does not allege that he missed any deadlines in that case or that he was unable to pursue his habeas corpus petition. These details are particularly absent because elsewhere in his complaint, Plaintiff alleges that on March 6, 2021, "his State Habeas Corpus petition…was again sent out via U.S. Priority Mailing" to the Seventh Judicial District Court, which "petition [was] later returned and filed on March 14, 2025" and on which petition Plaintiff is awaiting a ruling from Judge Fairman.  (*Id.* at 15).  Still elsewhere, he alleges that he was able to file a declaration and complaint on August 13, 2021, with the Seventh Judicial District Court, also before Judge Fairman.  (*Id.* at 11).  Given these contradictions, Plaintiff has not alleged an actual injury.  And otherwise, Plaintiff simply alleges that he did not get a response to certain of his mailings or that certain of his filings did not initially reach their intended destination, which allegations are not enough to plausibly claim actual injury.  So, the Court recommends dismissing Plaintiff's third amended complaint.

The Court further recommends that this dismissal be without prejudice to Plaintiff filing his claims in another case given the fact that the Court only screens the claim Plaintiff was given leave to amend, but without leave to amend in this case given Plaintiff's repeated inability to state a claim upon which relief can be granted.  *See Garmon v. County of Los Angeles*, 828 F.3d 837, 842 (9th Cir. 2016) (explaining that a district court abuses its discretion in denying leave to amend unless "the plaintiff has failed to cure the complaint's deficiencies despite repeated opportunities.").  Because the Court recommends dismissing Plaintiff's third amended complaint, it also denies his pending motions (ECF Nos. 111, 119, 120) as moot.

**ORDER**

**IT IS THEREFORE ORDERED** that Plaintiff's motions (ECF Nos. 111, 119, and 120) are **denied as moot.**

///

///

///

Page 9 of 10

**RECOMMENDATION**

**IT IS THEREFORE RECOMMENDED** that Plaintiff's third amended complaint be **dismissed without prejudice and without leave to amend.**

**NOTICE**

Pursuant to Local Rule IB 3-2 any objection to this Report and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days after service of this Notice. The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985) *reh'g denied*, 474 U.S. 1111 (1986). The Ninth Circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues could waive the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991); *see Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983); *see Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012).

DATED: February 24, 2026

_____
DANIEL J. ALBREGTS
UNITED STATES MAGISTRATE JUDGE